FOSTER, Appellant, vs. ROWE, imp., Respondent.

*April 17—May 8, 1906.*

*Taxation: Commission of equalization: Conclusiveness of proceedings: Jurisdiction: Discretion as to evidence: Constitutional law: Delegation of legislative power: Due process of law: Equal protection of the laws: Imposing nonjudicial powers on judge: Appointment of commission: Repeal of statute.*

1. The proceedings of commissioners of equalization appointed under sec. 1077a, Stats. 1898, if conducted in good faith and within their jurisdiction, are final and conclusive; and a want of jurisdiction must be affirmatively shown.

2. A broad discretion is vested in such commissioners respecting the taking of testimony; and their refusal to hear evidence that property was omitted from the tax roll in a certain city does not render their determination void.

3. The power to equalize taxes is a *quasi*-judicial power, and is not legislative in the sense that it cannot be delegated by the legislature to a board.

4. The commission of equalization provided for in sec. 1077a, Stats. 1898, acts upon the different municipalities in the county, not upon the individual taxpayers; and the fact that no notice to taxpayers is required does not render the statute void as depriving any person of property "without due process of law;" nor does the statute deny to the taxpayer "the equal protection of the laws."

5. Sec. 1077a, Stats. 1898, providing for appointment of commissioners of equalization by the circuit judge, is not unconstitutional on the ground that it imposes nonjudicial power upon such judge.

6. Where commissioners of equalization appointed under sec. 1077a, Stats. 1898, had fully performed their duties and made their determination before the repeal of that statute by ch. 474, Laws of 1905, such repeal did not affect their determination.

APPEAL from an order of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

This action was brought by a taxpayer of the village of Fairchild in Eau Claire county, on behalf of himself and other taxpayers, to restrain the clerk from carrying out upon the roll for 1901 two sums of money which he had been di-

rected to levy upon the property of the village in pursuance
of two certificates filed with the county clerk by the commis-
sioners of equalization acting under secs. 1077a and 1077b,
Stats. 1898.

The material part of the complaint is to the effect that
plaintiff is a resident, taxpayer, and owner of real estate sub-
ject to taxation in said village, and brings the action on behalf
of himself and other taxpayers; that the county board in
1899 equalized and determined the aggregate valuations of
the taxable property in the towns, villages, and cities of said
county; that afterwards, on application of the city of Eau
Claire under secs. 1077a and 1077b, Stats. 1898, commis-
sioners to review the equalization were appointed, and such
commissioners on review deducted from the valuation of the
cities of Eau Claire and Altoona certain sums and added the
same to other municipalities; that the county board in No-
vember, 1900, equalized the valuations of the county, and
thereafter, on application of the city of Eau Claire, commis-
sioners were appointed, who reviewed said valuations and de-
ducted from the valuation of the cities of Eau Claire and
Altoona and added to other municipalities certain sums;
that, when the commissioners who equalized the valuations for
1899 and 1900 were hearing evidence, the representatives of
certain towns in said county appeared before them and offered
to show that there was over $1,000,000 worth of property in
the city of Eau Claire on the 1st day of May of the year un-
der investigation, which consisted of credits due to residents
from banks in said city, which had not been assessed, but en-
tirely omitted from the assessment of that year, and which
were not exempt from taxation; and that the commissioners
who equalized for 1899 and 1900 refused to receive any evi-
dence as to such property, and did not take into consideration
in making their equalization any portion of said $1,000,000;
that the same should have been listed for taxation in said
city of Eau Claire for said years 1899 and 1900; that the

county board for each of said years, in determining the valuations of the property of said city of Eau Claire, took into account said $1,000,000; that representatives of said town also offered to show that there was a large amount of money, accounts, and credits aside from said deposits due from solvent persons to residents of said city of Eau Claire on May 1, 1899, and 1900, respectively, which had not been returned for taxation or assessed in said years, but which had been omitted from the assessment for each of said years, and which were not exempt from taxation; that the commissioners refused to receive evidence of such property, upon the ground that they had no authority to hear evidence upon or consider any property not appearing upon the assessment roll; that said commissioners did not take into consideration said moneys, accounts, and credits, but excluded the same from consideration in arriving at the relative valuation of the real and personal property in the city of Eau Claire, and that there was in fact of such property over $500,000 aside from the deposits in the banks mentioned which was subject to taxation for each of said years; that writs of *certiorari* were issued to review the proceedings of the commissioners for the years 1899 and 1900, and on motions said writs were superseded and the suits dismissed; that an appeal was taken from the order to the supreme court (*State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188); that thereafter, and immediately upon the entry of said order dismissing said suits and before relators therein could prepare their appeal papers, the county clerk of said county transmitted to the defendant, as clerk of said village, his certificate of the amount to be raised by said village as taxes and to be extended by said defendant as such town clerk against the property of the taxpayers of said town for the year 1900; that the aggregate amount of said tax so directed to be raised is $6,451.87, of which $1,234.47 is the sum growing out of the increase of the valuation of said town made by the commissioners who

equalized for 1899, and $405.05 and expenses is the sum growing out of the increase made in the valuation of said town by the commissioners who equalized for the year 1900; that said sums were directed to be collected of the taxpayers to satisfy the change made by the commissioners who equalized for said years, and that the determination and certificate of said commissioners for each of said years are null and void; that of the total tax directed to be levied $969.72 is state tax, and said sums are not needed for use in carrying on the business of the government of Wisconsin or the county of Eau Claire, but are directed to be levied to be used, and would be used, if paid, for the purpose of making an adjustment between said town and city of Eau Claire in accordance with the determination of said commissioners for said two years; that the town clerk will, unless restrained, insert in the tax roll the illegal tax mentioned; that said illegal tax extended and carried out upon the tax roll will constitute clouds upon the titles to the lands of the plaintiff and other taxpayers, and the amounts will be levied upon their personal property.

The clerk made default, and *Rowe,* a taxpayer of the city of Eau Claire, was allowed to defend, and demurred upon the following grounds: (1) Because the court had no jurisdiction of the subject of the action; (2) because plaintiff had no legal capacity to sue, in that he cannot sue on behalf of the village of Fairchild or the taxpayers thereof; (3) defect of parties plaintiff, in that the village of Fairchild was not made a party plaintiff; (4) want of facts sufficient to constitute a cause of action. From an order sustaining the demurrer this appeal was taken.

For the appellant there were briefs by *W. H. Frawley,* attorney, and *H. B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.*

For the respondent there was a brief by *Wickham & Farr,* and oral argument by *Mr. James Wickham.*

KERWIN, J.   1. Passing the grounds of demurrer for want of jurisdiction of the court, legal capacity to sue, and defect of parties, we proceed to consider the objection that the complaint does not state facts sufficient to constitute a cause of action.   This is the only ground of demurrer which we find it necessary to consider, and, if the complaint fails to state facts sufficient to constitute a cause of action, the order appealed from must be affirmed.   We are clearly of the opinion that the proceedings of the board, if conducted in good faith and within its jurisdiction, are final and conclusive, and the question to be considered is whether the allegations of the complaint show such a disregard of duty as to render its acts contrary to law and void.   The presumption is in favor of the regularity of the proceedings of the commissioners, and whoever attacks them must show affirmatively want of jurisdiction.   *State ex rel. Burnham v. Cornwall,* 97 Wis. 565, 73 N. W. 63.

The duties imposed are statutory.   Sec. 1077a provides, in effect, for the appointment of three commissioners to review the determination of the county board respecting the valuations of real and personal property in the county to determine what sum upon the hundred dollars should be added to or deducted from the aggregate valuations of real or personal property, or both, as the case may be, as made by the county board in order to produce a just relation between the valuations of real or personal property, or both, in the different cities, towns, and villages in the county; but that such commissioners shall in no case increase the valuation throughout the county above the aggregate valuation made by the county board.   The statute further provides for the giving of notice of the application for the appointment of commissioners, and, upon proof of the service of notice and presentation of affidavit stating the facts, the judge shall appoint three discreet freeholders, not residents or owners of real estate in the county, who shall proceed to review and examine in the

manner provided, and within three months make their deter-
mination and file a certificate under their hands and seal in
the office of the county clerk of the county, and that the valu-
ation determined shall be final and conclusive.    This section
provides, generally, with reference to the discharge of duties,
compensation, and execution of the trust reposed in them.
Sec. 1077b, Stats. 1898, provides that the commissioners shall
appoint a convenient time and place in such county for hear-
ing any evidence or arguments upon the valuations under re-
view to be offered by any taxpayer or officer of any city, vil-
lage, or town, and shall attend at the time and place named
and hear any evidence or arguments offered on behalf of tax-
payers, and shall sit at least five days; and, further, that the
commissioners "may adjourn from day to day and from time
to time, call for and examine any assessment or taxpayers or
records in the county, subpœna and swear witnesses, and, in
general, conduct the hearing after the usual manner of a
judicial hearing; but they shall hear evidence and arguments
and consider the facts as to the valuation of the property of
specific taxpayers only so far as in their judgment such valu-
ation bears on the just aggregate valuation of any city, vil-
lage, or town."

The principal charge made in the complaint, and the only
one which it becomes necessary to consider, is that the repre-
sentatives of different towns in the county appeared before
the commissioners when sitting to take testimony and hear ar-
guments and offered to prove that personal property to the
amount of about $1,500,000 in the city of Eau Claire, one of
the municipalities in said county, had been omitted from the
tax roll in the years 1899 and 1900, and that the village of
Fairchild, the complaining municipality, was one of the mu-
nicipalities that made such offer, and that the commissioners
refused to hear evidence as to this property on the ground
that it was not on the assessment rolls, and reached their con-
clusion by ignoring and failing to take into account the prop-

erty so omitted.   The question, therefore, arises whether such acts on the part of the commissioners rendered their proceedings void, or whether, in the refusal to hear such evidence, they were acting within their jurisdiction.

It is very plain, from the provisions of the statute above quoted, that the commissioners are vested with a broad discretion respecting the taking of testimony.   And this is necessarily so from the nature of the proceeding and the duties imposed.   Their duty is not to ascertain the property omitted from the tax roll, nor to take testimony for the purpose of determining that question, but to call for and examine assessments or taxpayers or records in the county, and consider the facts as to the valuation of the property of specific taxpayers only so far as in their judgment such valuation bears on the just aggregate valuation of any city, village, or town.   The commissioners were obliged to sit five days only to take testimony and hear arguments, and to hold that they must take all evidence offered which they did not regard pertinent might in any case defeat the purpose of the statute.   It is very plain, from the express language of the statute, that they are required to take only the evidence of such taxpayers as in their judgment may tend reasonably to aid them in the performance of their duties.   The extent of their duties, the amount of property to be examined, and the limited time for taking testimony and hearing arguments, in connection with the language of the statute, clearly show that it was the intention of the legislature that a broad discretion should be vested in the commissioners respecting the taking of testimony and the performance of their duties.   The statute provides that the commissioners shall conduct the hearing after the usual manner of a judicial hearing.   They are presumed to know from the examination of property throughout the county, and the valuations placed thereon by the assessors and board of equalization, what evidence will best aid them in determining the basis upon which property was assessed in the different

municipalities in the county, to the end that they may properly equalize the valuations between the different municipalities. The fact that certain property was omitted from the assessment rolls in a municipality would not necessarily aid them in the performance of their duty. To attempt to discover all property omitted from the assessment rolls in the different municipalities would manifestly be a hopeless task, and one which it is very plain the legislature never intended to impose upon them. The information accessible to them by examination of property throughout the county, and the means provided by the statutes (secs. 1007, 1010, 1050, 1066), would be far more effectual in affording aid to the commissioners than evidence of specific items of property omitted from the assessment rolls, even if they were obliged to consider such evidence. The duty of the commissioners was simply to review the action of the county board and to examine and determine what sum upon the hundred dollars should be added to or deducted from the aggregate valuation as made by the county board, and the county board made its equalization upon the assessments made throughout the county. It had nothing to do with the property omitted from the tax roll. We think, therefore, the refusal to hear evidence that property was omitted from the tax roll in the city of Eau Claire was not error and is no ground for attack upon the proceedings of the commissioners.

2. The constitutionality of the law is challenged by appellant upon several grounds, while on the part of the respondent it is asserted that the law has been declared constitutional by this court in several cases. *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797; *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188; *State ex rel. Burnham v. Cornwall,* 97 Wis. 565, 73 N. W. 63; *Outagamie Co. v. Greenville,* 77 Wis. 165, 45 N. W. 1090; *State ex rel. Manitowoc v. County Clerk,* 59 Wis. 15, 16 N. W. 617; *State ex rel. Brown Co. v. Myers,* 52 Wis. 628, 9 N. W. 777. While it is

true this court has in some cases where the law has been before it treated these statutes as valid, it has, it is believed, never passed directly upon some, at least, of the questions presented by the appellant. Appellant contends that the law in question is unconstitutional because it assumes to delegate to the commissioners a function purely legislative, and the legislative power necessary to execute it, and relies upon *West v. Ballard,* 32 Wis. 168; *Teegarden v. Racine,* 56 Wis. 545, 14 N. W. 614; and *In re Incorporation of North Milwaukee,* 93 Wis. 616, 67 N. W. 1033. In *West v. Ballard, supra,* this court held that the action of the county board in making the equalization was in the nature of a legislative act, and therefore a court could not set aside its acts even for fraud. So, if that case were held authority here, and the commissioners occupied the position of a legislative body, clearly, upon the allegations of the complaint, the demurrer should have been sustained, assuming that the legislature had power to grant such authority to the commissioners. There is nothing in *West v. Ballard* indicating that the legislature cannot confer power upon the commissioners to equalize taxes between the municipalities of a county. *Teegarden v. Racine, supra,* does not seem to touch the question. In the *North Milwaukee Case* it was held that the creation of municipal corporations is the exercise of legislative power and cannot be delegated except as authorized by the constitution, and that the circuit court cannot determine whether it is for the best interests of the people of a locality that they be incorporated and fix the boundaries of the municipality. In the latter case it was held that the circuit court performed a legislative function in making the order incorporating the village, and therefore the statute authorizing such act was unconstitutional. It will be seen, however, that the case has no application to the question before us. The power to equalize taxes is not legislative, in the sense that it cannot be delegated by the legislature to a board. On the contrary, the authority of the legislature to

create such boards, and authorize courts to appoint them, is well established. This doctrine is recognized and asserted in the *North Milwaukee Case*. The power delegated to the commissioners is not a legislative power in the constitutional sense, but *quasi*-judicial. *Brown v. Oneida Co.* 103 Wis. 149, 79 N. W. 216; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797; 1 Cooley, Taxation, 786, and cases cited. True, there is conflict in the decisions of courts upon this subject, but the weight of authority and better reason appear to support the doctrine that the power delegated to such boards to equalize taxes is in its nature *quasi*-judicial and not legislative. The commissioners make an examination of the property throughout the county, subpœna and swear witnesses, take testimony, and in general conduct the hearing after the usual manner of a judicial hearing.

3. It is insisted that the act is unconstitutional because it contravenes sec. 1, amendm. XIV, Constitution of the United States: "Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The contention is that no sufficient notice was given to the taxpayers. This contention cannot be sustained. The board acts upon the different municipalities in the county, not upon the individual taxpayers; hence no notice to taxpayers is necessary. *Spalding v. Hill,* 86 Ky. 656, 7 S. W. 27; 1 Cooley, Taxation (3d ed.) 786; *State Railroad Tax Cases,* 92 U. S. 575, 609. Some of the cases cited by counsel on this point are cases of special assessments against property owners for local improvements, where the courts hold that such assessments can be sustained only upon the theory that lands upon which they are laid are specially benefited thereby, while others are cases not relating to the taxing power at all, and, so far as we can discover, have no bearing upon the question here.

4. It is also claimed that the statute denies to the taxpayer

the "equal protection of the laws," and thus violates the federal constitution. We think it very clear that this position is untenable. *Bittenhaus v. Johnston*, 92 Wis. 588, 66 N. W. 805; *Hayes v. Missouri*, 120 U. S. 68, 71, 7 Sup. Ct. 350.

5. It is further contended that the act is unconstitutional because it imposes nonjudicial powers upon the circuit judge. We think little need be said upon this subject. The appointing power of courts was recognized and approved and held not to be the exercise of legislative power in *In re Incorporation of North Milwaukee*, 93 Wis. 616, 67 N. W. 1033, and this doctrine seems to be well supported by authority. *People ex rel. Rhodes v. Fleming*, 10 Colo. 553, 16 Pac. 298; 17 Am. & Eng. Ency. of Law (2d ed.) 717; 6 Am. & Eng. Ency. of Law (2d ed.) 1060; *Russell v. Cooley*, 69 Ga. 215; *Walker v. Cincinnati*, 21 Ohio St. 14; *Ross v. Board of Freeholders*, 69 N. J. Law, 291, 55 Atl. 310. The power of circuit courts to appoint commissioners under the act in question has been heretofore recognized in this court, though perhaps not directly passed upon. *State ex rel. Brown Co. v. Myers*, 52 Wis. 628, 9 N. W. 777; *Outagamie Co. v. Greenville*, 77 Wis. 165, 45 N. W. 1090; *State ex rel. Manitowoc v. County Clerk*, 59 Wis. 15, 16 N. W. 617; *State ex rel. Ellis v. Thorne*, 112 Wis. 81, 87 N. W. 797.

6. It is further insisted that there is "no power to tax for this purpose," that the statute is void because unworkable, and that part of the tax has been paid. We think what has been already said fully answers this contention, and that it is unnecessary to prolong discussion under this contention.

7. It is also insisted that the repeal of the law extinguished the right to further proceed in the matter, and authorities are cited to the effect that, where the right is created by statute, the right of action as well as the action itself must be saved by the repealing act. The statutes in question were repealed by ch. 474, Laws of 1905, but a saving clause was inserted to the effect that any pending proceeding should proceed to final

determination the same as if the act had not been passed. The repeal of the statute, however, cannot affect the present proceeding, because the commissioners had fully performed their duties and made their determination before the repeal. The functions of the commissioners were performed and their duties ended before the repeal of the law.

We think the court below was right in sustaining the demurrer.

*By the Court.*—Order affirmed.