State of Wisconsin ex rel. Brown County vs. Myers, Judge, etc.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 27, 1881.

---

THE STATE OF WISCONSIN ex rel. BROWN COUNTY vs. MYERS, Judge of the Tenth Judicial Circuit.

*August 30 — September 27, 1881.*

CONSTITUTIONAL LAW: TAXATION. *Commissioners to review aggregate valuations of taxable property by county board.*

1. Ch. 291 of 1880, which provides for the appointment, by the circuit judge, in certain cases, of commissioners to review the aggregate valuations, made by the county board, of the taxable property in the several towns, villages and cities of the county, is valid; the commissioners so provided for are not *officers*, within the meaning of sec. 9, art. XIII of the state constitution; the act does not invade any constitutional right of local self-government; and it was competent for the legislature to thus provide for reviewing valuations made by the county board in the year *before* the passage of the act.

2. Said commissioners have power to review and equalize the valuations of *all* taxable property, both real and personal, as fixed by the county board; but if their power were limited to equalizing real property, that would not, it seems, invalidate the act.

CERTIORARI to the Circuit Judge of the Tenth Judicial Circuit.

On the 18th day of November, 1880, and within one year from the date of the decision complained of, the city of Green Bay petitioned the judge of the tenth judicial circuit for the appointment of three commissioners, under ch. 291, Laws of 1880, to review and readjust the assessment of taxable property in Brown county, made by the county board in November, 1879. On the 6th day of June, 1881, a similar petition was presented for the appointment of commissioners to review

the assessment made in November, 1880. The prayer of both petitions was granted, and on the 6th day of June, 1881, commissioners were appointed by the judge, who duly qualified and entered upon the discharge of their duties.

Upon the application of Brown county, writs of *certiorari* were issued out of the supreme court, directed to the circuit judge of the tenth judicial circuit, by virtue of which all proceedings and orders made by said judge upon such petition were removed to the supreme court.

The city of Green Bay thereupon moved to quash said writs.

*H. J. Huntington*, for the motion.

*Gabe Bouck, contra.*

COLE, C. J. The question raised on these motions to quash relates to the validity of chapter 291, Laws of 1880. That act authorizes the mayor and common council of any city, the president and board of trustees of any village, or supervisors of any town, who may consider such city, village or town aggrieved by the action which may have been heretofore, or shall hereafter be, made or taken under section 1073, R. S., by the board of supervisors of the county wherein such city, village or town is located, to apply, within a year from the time such action by the county board may have been or shall be made, to the circuit judge of the circuit wherein such county is situated, for the appointment of three commissioners to review the same, and to examine and determine what sum upon the hundred dollars should be added to or deducted from the aggregate valuations of the taxable property as made by the county board, in order to produce a just relation between all the valuations of the taxable property of the county. The commissioners are to be three discreet freeholders, not residents or owners of real estate in the county, who are to be appointed upon due notice to the board; are required to take and subscribe an oath to faithfully and impartially discharge the duties imposed upon them by the act; but cannot in any

case increase the aggregate valuation of all the cities, villages and towns above the aggregate valuations made by the county board. This is the substance of the act, the validity of which is called in question. The manifest object and intent of this law are, to secure justice and equity in the valuation of the taxable property as between a city, village and towns of the same county. The law goes upon the assumption that a county board, in equalizing the relative value of the taxable property in respect to such governmental subdivisions, may make mistakes or not act impartially. Provision is therefore made, through the machinery of this act, for reviewing its action by three discreet and disinterested men. The functions of these commissioners over the subject are limited. They may increase or diminish the aggregate valuation of the city or town as determined by the board, so as to produce a just relation between all the valuations, but cannot in any instance increase the entire aggregate valuation of the taxable property of the county as fixed by the board.

It is not easy to discover any well-founded objection to this law. It surely appears to be a wholesome enactment — one intended to produce, in certain cases, greater uniformity and fairness in the assessments of property, and thus insure greater equality in the burdens of taxation. For it is manifest, if there is not a fair valuation of property for the purposes of taxation, there can be no just apportionment of the tax. But, whether the law is wise or unwise, it is the plain duty of the court to uphold it, unless it violates some provision of the constitution. It is claimed by the learned counsel for the county that it does transcend the limits of legislative power, and is invalid, on various grounds. *First*, he says it unwarrantably interferes with the right of local self-government which is secured to counties, cities and towns by the constitution; and he says that the constitution, in various provisions, recognizes these governmental subdivisions as es-

sential parts of the machinery of the state government, and secures to them control of their local affairs, more especially in all matters of taxation.  In a certain sense this argument is sound.  There are, doubtless, limits to the legislative power over counties and municipal corporations.  That subject has more than once engaged the attention of this court, notably in *State ex rel. McCurdy v. Tappan*, 29 Wis., 664, and cases there cited in the opinion by Mr. Justice Lyon.  But the proper determination of this case does not call for any extended consideration of that subject now.  An examination of the law in question will show, we think, that it does not in any way unwarrantably invade the power of the county board, or interfere with the right of local self-government.  Its object, as we have said, is to secure greater uniformity and equality in the valuation of the taxable property as between the cities and towns of the county.  The matter of listing and estimating property, and of equalizing assessments for the purpose of taxation, is one essentially within the control of the legislature.  It is not necessary to refer to the course now prescribed for doing these things, further than to observe that local assessors, chosen by the people or appointed by city officers, list the persons and property in their respective districts, and make the primary valuation of all property subject to taxation.  On the completion of the assessment rolls, the clerks of the towns and cities make out and transmit to the county clerk a detailed statement of the aggregate valuations of the different items of personal property; the number of acres of land, and the aggregate value thereof; together with the aggregate value of all village and city lots, as they appear on the assessment rolls.  The county board examines these statements, and determines the relative value of all the taxable property of the different towns, etc.  Often errors or gross irregularities are found to exist in the valuations made by the county board.  And it is for the purpose of reviewing and

correcting these errors and inequalities in the valuation of the different towns, etc., that the commissioners are appointed under this act.

The law is evidently in furtherance of justice and fairness in the equalization of values, and does not seem open to any constitutional objection; for this whole matter is within the control of the legislature, which, doubtless, might abolish the present system and create a state board for the assessment and equalization of the value of the taxable property of the state. At all events, such a law would be within the constitutional power of the legislature. Therefore the legislature may change the existing method and adopt one better calculated to insure greater uniformity and fairness in the assessment and equalization of the taxable property of the state, when such a method can be devised. A fair valuation of property constitutes the very basis for the apportionment of a tax, and is the main object to be secured in all legislation upon the subject.

Nor do we consider it a valid objection to the law that the commissioners are appointed by the circuit judge, and not chosen by the electors of the different towns. It is, doubtless, the meaning and intent of the constitution, that certain officers shall be elected or appointed by the people of the district to which their offices appertain. But we do not think the commissioners appointed under this act are " officers " within the meaning of the constitution. They are merely appointed to do a specific act, and when that act is performed their power ceases. They bear a strong analogy to the commissioners appointed by justices of the peace to review the action of town supervisors in laying out or discontinuing highways, etc. There is a distinction between an office and a mere service or employment, as is pointed out in *Hall v. State*, 39 Wis., 79; *Weise v. Board of Sup'rs*, 51 Wis., 564. The commissioners come within the latter category.

A further objection is taken to the law, which is, that the

commissioners, when appointed, have only power to review and equalize the valuations of *real estate* as fixed by the county board. We doubt if we could declare the law invalid for that reason, were the objection well founded in fact; for, as we have said more than once, this whole matter of assessing and valuing property for the purposes of taxation is under the control of the legislature. It might be an unwise enactment, but we can see no constitutional objection to a law which authorized the appointment of commissioners merely to adjust the valuation of real estate between the different towns, as determined by the county board. But while there is language in the law which tends to support the inference that the commissioners were not to review the valuations of personal property, and equalize such valuations, yet we do not think the legislature intended thus to restrict their powers. The words, that the commissioners shall determine what sum upon the $100 shall be added to or deducted from the aggregate valuations, etc., "in order to produce a just relation between all the valuations of real estate," etc., must be understood as referring rather to the object or purpose of their appointment, than as defining the extent of their powers; and, when the act is construed in connection with the provisions of the Revised Statutes to which it relates, the conclusion is irresistible that the commissioners have power to review and equalize the valuations of all the taxable property, both real and personal, as fixed by the county board.

The remaining objection taken to the law is, that it is retroactive, so far as reviewing the decision of the county board in 1879 is concerned, and for that reason invalid. This court, however, has repeatedly sustained laws enacted to cure defects in tax proceedings. *Tallman v. City of Janesville*, 17 Wis., 71; *Cross v. City of Milwaukee*, 19 Wis., 509; *May v. Holdridge*, 23 Wis., 93; *Mills v. Charleton*, 29 Wis., 411; *Plumer v. Sup'rs*, 46 Wis., 163; *Flanders v. Town of Merrimack*,

48 Wis., 567; *Single v. Town of Stettin*, 49 Wis., 645; *Kingsley v. Sup'rs*, id., 649. And this law comes fully within the principle and reasoning of those decisions.

The conclusion which we have reached is, that the motions to quash the writs of *certiorari* in these cases must prevail.

*By the Court.*— Motions to quash granted.