ZIMMER *v.* BOARD OF SUPERVISORS OF BAY COUNTY.

1. Constitutional Law—Judicial Power—Courts.

> A statute by which a committee on appeal is appointed by members of the board of supervisors who consider themselves aggrieved by an apportionment of taxes between townships and cities, giving the committee power to summon witnesses, consider evidence and determine whether the equalization is just, confers *quasi* judicial powers.   Act No. 292, Pub. Acts 1909.

2. Same—Courts—Words and Phrases.

> Such committee is not a court within the meaning of Constitution, Art. 7, § 1, requiring a two-thirds vote of the legislature to establish additional courts.

3. Same—Local Self-Government—Counties—Taxation.

> It is in violation of the constitutional principle of local self-government for the legislature to enact a statute which authorizes a dissatisfied member of the board of supervisors to create a committee of three consisting of nonresidents of the county, of whom the dissenting member is authorized to name one, and who are required by the act to determine whether or not the apportionment among townships and cities *is just*.

4. Same—Legislative Authority—Taxation.

> The legislature has no power under the Constitution to clothe one or two supervisors of a county with authority to name a tribunal which shall have the right to assume and perform the duties devolving upon the board itself under the law.

5. COURTS—DISQUALIFICATION OF JUDGES — STATUTES — CONSTITUTIONAL LAW.

> A statute which permits a supervisor, aggrieved by the apportionment of a tax, to name one of the members of a board or committee to act as an appeal tribunal, violates the rule that no man may be a judge or select the judge of a case in which he has an interest.

Certiorari to Bay; Collins, J. Submitted November 29, 1909. (Calendar No. 23,746.) Decided December 21, 1909.

Mandamus by Nicholas D. Zimmer to compel the board of supervisors of Bay county to convene and apportion the State and county taxes in accordance with the report of a committee on appeals acting under the provisions of Act No. 292, Pub. Acts 1909. An order denying the writ is reviewed by relator on writ of certiorari. Affirmed.

*Pierce & Kinnane*, for relator.

*Gillett & Clark*, for respondent.

BROOKE, J. Relator is a duly qualified supervisor of Bangor township, one of the political divisions of Bay county. The board of supervisors of said county consists of 39 members, 23 of whom were elected from the city of Bay City, and 16 from the townships. At the annual meeting, held in October, 1909, the board made and adopted an equalization of the valuations of the several townships of said Bay county, and of the city of Bay City. Whereupon relator, considering his township (Bangor) aggrieved by the action of the board in said equalization, filed a petition for the purpose of appealing therefrom to the committee on appeal, in accordance with the provisions of Act No. 292, Public Acts 1909, and named an ex-supervisor of an adjoining (Saginaw) county, one Cameron C. Speer, as the first member of said committee on appeal. Notice of said appeal having been duly served upon the chairman of the board, he, the chairman (George Hartingh,

supervisor of Pinconning township ), proceeded in accordance with the provisions of the statute to name the second member of said committee on appeal, in the person of one George W. Kenney, an ex-supervisor of Arenac county. Speer and Kenney then met, and named one James Spiker, an ex-supervisor of Midland county, as the third member of said committee.

The committee organized by electing a chairman and clerk, and held sessions from November 8th to 13th, inclusive, hearing the testimony of all persons who appeared before it, examined the assessment rolls, and inspected, to some extent, the real estate in the city of Bay City and the adjoining townships, and on November 13th filed its " decision and determination," which is, in part, as follows:

"Said committee on appeal, after due consideration of all matters relating to the equalization of the valuations of the several townships of Bay county, and the city of Bay City, made by the board of supervisors of said county at the October, 1909, session of said board, being the equalization appealed from in this proceeding, do hereby find, decide, determine, and decree as follows: ( *a* ) That the equalization made by the board of supervisors of said county, at its October, 1909, session, is unfair, unjust, and discriminatory, and that the valuations of said county have been improperly equalized by said equalization, made by said board as aforesaid. ( *b* ) That said equalization, made by the board of supervisors of said county at its October, 1909, session, as aforesaid, be, and the same is hereby, revised, altered, and amended by adding to the valuations of the real estate of the city of Bay City, as equalized at the said October session of said board of supervisors, as aforesaid, the sum of $1,474,036, and deducting from the valuations of the real estate of the townships of said county, severally, as equalized at the said October session of said board, the sums respectively set opposite the name of each township, viz." (amounting in the aggregate to $1,474,036).

The clerk of said board, acting under the provisions of said act, proceeded to call a meeting of the board to be held on November 18, 1909, for the purpose of apportion-

ing the State and county taxes, to be raised by said county for 1909, in accordance with the equalization made by said committee on appeal. On the day appointed for said meeting the 16 supervisors from the townships were present, but the 23 from the city, apparently by concert of action, absented themselves, thereby preventing the assembly of a quorum, and the transaction of any business. Relator thereupon filed his petition in the circuit court, praying for mandamus to compel the city members of the board to attend and proceed to apportion the State and county taxes for the year 1909, in accordance with the report of the committee on appeal. The circuit court denied the writ, and relator has brought the case here by writ of certiorari.

It is urged by the respondent: *First*, that said act is unconstitutional and void, because it attempts to confer upon the "committee on appeal" judicial powers; and, *second*, because it deprives counties of the inherent right of local self-government.

Does the act confer judicial powers upon the committee? The act provides:

" The said committee on appeal shall, at the time herein provided for, forthwith examine the appellant's petition, and if in the judgment of said committee, there be a showing to the effect that the equalization complained of is unfair, unjust, inequitable, or discriminatory, it shall proceed at once to investigate and pass upon complaints, relative to the assessment and taxation of property, and the action of the said board of supervisors, in connection with the equalization and valuation of said county. The said committee on appeal shall have the authority to consider and pass upon the action and determination of the said board of supervisors, in equalizing said valuations, and may consider complaints relative to the assessment and taxation of property. The said committee on appeal shall have the right to order the said board of supervisors to reconvene and to cause the assessment rolls of said county to be brought before it, and it may summon the several supervisors of said county before it, to give evidence in relation to said equalization, and may take such further action and may make such further investigation in the

premises, as it may deem necessary.  *  *  *  If the said committee on appeal, after due consideration, decide that the valuations of said county have been improperly equalized, it shall proceed to make such deductions from, or additions to, the valuations of the respective townships, wards, or cities, as may be deemed proper.  *  *  *  As soon as said board of supervisors has reconvened, it shall immediately proceed to apportion the State and county taxes, to the several assessing districts, in accordance with the equalization so made."

We think it is apparent from the above quotation that the legislature did confer *quasi* judicial powers upon the committee.   It has power to summon witnesses, to hear evidence, and to *determine* whether or not the equalization made by the board of supervisors is just.

In the case of *State, ex rel. Ellis,* v. *Thorne,* 112 Wis. 81 (87 N. W. 797, 55 L. R. A. 956), where a somewhat similar act was under consideration, it was held that the act conferred judicial powers, but that it was not in conflict with the Constitution of that State.   Our Constitution (article 7, § 1) provides:

"The judicial power shall be vested in one Supreme Court, circuit courts, probate courts, justices of the peace, and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house."

An examination of Senate Journal (volume 2, p. 1288) shows that the act in question did not receive a two-thirds vote of the members of the Senate.   This act, therefore, if the committee on appeal is to be considered a "court of civil and criminal jurisdiction" within the meaning of the constitutional provision *supra*, must fail, for the reason that it did not receive the requisite number of votes.   We are, however, of the opinion that the committee on appeal should not be considered a "court" within the meaning of the Constitution.   It is quite clear that it is both necessary and expedient for the legislature to confer judicial or *quasi* judicial functions upon executive or administrative

officers, the exercise of which is merely occasional or incidental. To call every such officer a judge, and his office a court, would, we think, be entirely unwarranted. See *Attorney General* v. *Jochim*, 99 Mich. 358 (58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606), where it is held that the exercise of judicial or *quasi* judicial power by the governor of the State was not unconstitutional.

Does the act deprive counties of their inherent right of local self-government? It is relator's claim that upon this point the case at bar is ruled by *Board of State Tax Commissioners* v. *Board of Assessors*, 124 Mich. 491 (83 N. W. 209); *Board of State Tax Commissioners* v. *Quinn*, 125 Mich. 128 (84 N. W. 1). An examination of the first of these two cases, which upon the point under consideration rules the second, will clearly demonstrate the ground upon which the decision went. At page 496 Chief Justice MONTGOMERY, speaking for the court, says:

" It was not distinctively a matter of local concern. The State is concerned in the proper assessment of property, not only as to its own interests, as they are affected by the collection or failure to collect the funds necessary to carry on government, but, as the supreme authority in the State, the legislature is required, by section 12, Art. 14, of the Constitution, to see to it that assessments be made upon property at its real value."

Can it be said of the act under consideration that the State has an interest in the activities of the committee on appeal, or that they are not " distinctively a matter of local concern ?" We think not. The concluding sentence of section 34 of the act is as follows:

" *Provided further*, That the said committee on appeal, shall not increase the aggregate valuation of said county."

It is manifest that the State has no interest in the matter. The county as a whole pays the same tax to the State, whether it pays according to one equalization or the other. The burden is simply, in part, lifted from one

township or ward, and imposed upon another township or ward. The action of the committee produces a purely local result. Its action, however, relieves one portion of the local community from taxation in a measure, and imposes upon another an additional burden. This result is reached through the intervention of a nonresident body of men not representatives of the people of the county in which they act, and is repugnant to the well-settled principles of local self-government, so frequently asserted and upheld by an unbroken line of decisions of this court. *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103); *People* v. *Murray,* 89 Mich. 276 (50 N. W. 995, 14 L. R. A. 809, 28 Am. St. Rep. 294); *Township of Ada* v. *Kent Circuit Judge,* 114 Mich. 77 (72 N. W. 35); *Moreland* v. *Millen,* 126 Mich. 381 (85 N. W. 882); *Board of Road Com'rs of Wayne County* v. *Board of Auditors,* 148 Mich. 255 (111 N. W. 901); *Davidson* v. *Hine,* 151 Mich. 294 (115 N. W. 246, 15 L. R. A. [N. S.] 575, 123 Am. St. Rep. 267).

We have said the committee on appeal is not representative of the people of Bay county. The method of its appointment provided by the act clearly shows that it was the intention of the legislature to provide for its creation from nonresident elements, without appeal to the citizens of the county in which it is to act.

The legislature has no power, under the Constitution, to clothe one or two supervisors of a county with authority to name a tribunal which shall have the right to assume and perform the duties devolving upon the board itself, under the law. The board of supervisors is elected by the people of the county, and represents the people of the county. The committee on appeal, appointed in the manner set out in the act, represents nobody, unless it can be said to represent the supervisor who called it into being, by filing his claim of appeal and naming one of its three members.

A familiar rule of law is that no man may be a judge in his own case. It is equally true that no man may appoint a tribunal (or any constituent part thereof) to de-

termine a case in which he is interested. In conferring the power of appointment upon a supervisor the legislature does not appeal to his discretion. Indeed the power is only to be exercised when "he considers his township or city aggrieved." In other words, when, as a representative of his township, he has become a partisan with a grievance, he may name one of three of a tribunal to pass upon and adjudicate that grievance. The legitimate result of such a course is a tribunal unfair and partisan in character. No law permitting such consequences can be sustained. *Atchison, etc., R. Co.* v. *Clark,* 60 Kan. 826 (58 Pac. 477, 47 L. R. A. 77); *Meyers* v. *Shields,* 61 Fed. 713; *Brinkerhoff* v. *Brumfield,* 94 Fed. 422.

No better illustration of the vice of such legislation could be afforded than the case at bar. Relator and the chairman of the board, both being supervisors of townships, and being of the so-called minority, upon said board, name two members of the committee. To say that, in the exercise of this power of appointment, it is to be presumed that the supervisors will select impartial and unprejudiced men is idle. It entirely ignores one of the commonest of human attributes, selfishness. In fact the act seems to contemplate that the dissatisfied supervisor shall name a partisan; at any rate, he is not enjoined, either in terms or by implication, to select a man of fairness and impartiality. The two, thus selected, agree on a third. As the committee in the case at bar is constituted, it is quite immaterial whether he be a fair man or otherwise, as the two already selected constitute a majority of the committee and control his action. What this committee did in the premises has been outlined *supra.* Whether its action evidences unfairness and discrimination or not is a matter of no consequence. If what it *did* do is legal, then what it *could* do in a like case would be proper, and we would doubtless see discrimination, not only of the townships against the city, or the city against the townships, but discrimination of one or two townships against all the rest, or of one or two wards against all the rest, and this, too, resulting

from the acts of men not resident in the county, not elected by its citizens, and not responsible to any one for the proper, fair, and impartial performance of their duties.

The action of the learned circuit judge in denying the writ, upon the ground that the act is unconstitutional, is affirmed.

GRANT, MONTGOMERY, HOOKER, and MCALVAY, JJ.; concurred with BROOKE, J.

OSTRANDER, J.  The proceeding in which boards of supervisors of counties examine the assessment rolls of the townships and wards to ascertain whether the values of real estate have been uniformly estimated, and, if it determines that such values as they appear upon the rolls are relatively unequal, add to or deduct from the total assessed valuation of such townships and wards, or some of them, an amount which will, in the judgment of the board, produce an equal and uniform valuation of real estate, is a familiar proceeding, a step in the system established for the collection of public revenues.  It is upon the footing established in this proceeding that the levy apportioned by the State to the county is again apportioned to the taxing districts within the county.  By Act No. 292, Pub. Acts 1909, the tax law was amended so as to provide for a review of the action of boards of supervisors in this behalf, and it is this provision for a review and for an equalization of rolls by a committee on appeal which is, in this proceeding, attacked.  The grounds upon which the constitutionality of the provision is assailed are (1) that judicial power is conferred upon the committee on appeal; (2) that it deprives counties of the inherent right of local self-government; (3) the tribunal or agency which is created is not an impartial one; (4) the subject-matter of the amendment is not germane to the subject-matter of the original act, and not within the title thereof; (5) the act as amended is incomplete and defective—not a workable law.  The circuit court for Bay county was asked to compel such action of the board

of supervisors as would permit the law to be carried into effect. This the court declined to do, having reached the conclusion that the legislature had no power to provide for a review of the equalization made by the board of supervisors except by a board of State officers of higher authority and more extensive powers than those possessed by the board of supervisors, and that the law does not provide for an impartial tribunal. There is therefore involved here the always grave responsibility of considering whether an act of the legislature should be declared to be invalid. The contentions presented, excepting, perhaps, the one last stated, may be considered together.

It is clear that the power of the legislature extends so far as to provide for a system for the levying and collecting of taxes, including the designation of the agencies to be employed. *Board of State Tax Com'rs* v. *Board of Assessors*, 124 Mich. 491 (83 N. W. 209). See, also, *State, ex rel. County of Brown,* v. *Myers,* 52 Wis. 628 (9 N. W. 777); 1 Cooley on Taxation (3d Ed.), p. 43. We are familiar with legislation which provides for appeals from the determination of certain officers to certain other officers or boards, and this in matters purely local in character. Examples will be found in 2 Comp. Laws, §§ 4042, 4043, 4707; Act No. 272, Pub. Acts 1899, in which, in chapter 5, the probate court is authorized to appoint, in appeals from the assessment of drain taxes, a board of review of disinterested and competent freeholders "not residents of the township or townships affected by said drain." It is as well within the legislative power to provide the agency which shall finally determine when a proper equalization has been made, as it is to provide the agency which shall determine when taxable property has been properly listed and valued upon assessment rolls. The legislative provision is no more an invasion of the right of local self-government in one case than it is in the other. And an amendment to a general tax law, which does no more than to provide for a review of the equalization and supply an agency for such review, is an amendment

within the title of the original act.    If it had been included
in the original act, there could be no question that the
provision was within the title.    If the legislation in ques-
tion does no more than this, and is otherwise capable of
enforcement, it cannot be said to be an unconstitutional ex-
ercise of legislative power, or to be invalid, because a new
agency or tribunal, which does no more—has no greater
powers in the premises—than the board of supervisors has
always exercised, ought not to be held to be a court or a
body exercising judicial powers, within the meaning of
the Constitution.    The controlling question, therefore, is
whether the law merely provides for a new or additional
proceeding in the general system, and for a new agency,
or whether it does more or less than this.

Having admitted that within certain constitutional re-
strictions, not applicable here, the power of the legislature
in matters concerning the levying and collecting of taxes
is plenary, a successful attack upon the law in question
must proceed upon the theory of a failure, in the particu-
lar instance, to accomplish what the legislature had power
to accomplish.    The powers given by the act to the com-
mittee on appeal are no other or greater than those exer-
cised, time out of mind, by boards of supervisors, and the
act is not open to the criticism that excessive powers are
granted, or powers too limited to accomplish the evident
purpose of the legislature.    Invalidity of the legislation,
if it is invalid, must arise out of the manner provided for
constituting the committee on appeal.    It is well to notice
the provision with some care.    The committee must be
selected from ex-supervisors of adjoining counties.    An
ex-supervisor, when chosen, must act under penalty of
fine or imprisonment, or both.    Therefore one conscious
of a lack of ability, or knowing himself to be not indiffer-
ent, must nevertheless serve.    No oath is required, no
right to object to the committee is secured.    The selection
of the committee is not made by the legislature, or by any
responsible officer of the State, nor is the indifference of
the members of the committee a condition which is even

referred to. A member of the committee, though a non-resident of the county, may be owner of property in the county. The committee is selected—the tribunal is created—by interested parties. It is a maxim of the law, older than our Constitutions, that no man may be constituted a judge in his own cause. It is applicable to every case where an aggrieved party is permitted to select the judge. Private rights may, by agreement of parties, so be submitted to arbitration that courts may enforce the awards. 3 Comp. Laws, chap. 302. But in the matter before us, public as well as private interests are involved, and may be determined by an agency selected by representatives of the parties aggrieved. In the somewhat similar Wisconsin statute, to which attention has been directed, the circuit judge is required to appoint the commissioners; who may not be owners of real estate in the county; must be appointed upon notice to the board of supervisors; be sworn to faithfully and impartially discharge the duties imposed. *State, ex rel. County of Brown,* v. *Myers, supra; State, ex rel. Ellis,* v. *Thorne,* 112 Wis. 81 (87 N. W. 797, 55 L. R. A. 956). We are constrained to say that the legislature in the act in question has constituted neither a State nor a local agency of taxation, but has, inadvertently no doubt, delegated to aggrieved parties the selection of a committee empowered to undo what the regularly elected officers of the townships and wards of the county have done officially. A privately constituted and officially irresponsible committee is empowered to review and perform the duties of responsible officials.

We are required to, and do, affirm the order of the circuit court for Bay county. No costs are awarded.

BLAIR, C. J., and MOORE, J., concurred with OSTRANDER, J.