Evenson, Respondent, vs. The State and another, imp., Appellants.

*February 10—March 10, 1925.*

*Towns: Audit of accounts by tax commission: On request of town board: On motion of commission: Preliminary investigation: Charges for audit: Claim against town: Form: Constitutionality of statute authorizing audit.*

1. Sub. (14), sec. 73.03, Stats., directing the state tax commission to audit the books of a town upon request therefor by the town board, and also authorizing such an audit on its own motion, and the collection of charges therefor, is not unconstitutional as depriving a taxpayer of the town of property without due process of law.   p. 317.

2. A request for an audit by the electors at the town meeting is not a compliance with the statutory request by "the town or village board," which makes it the duty of the commission to act.   p. 317.

3. Where the commission acts "upon its own motion," it has discretion to determine the necessity of the audit, but need not, prior to the exercise of the discretion, make an investigation as to necessity.   p. 318.

4. The claim of the tax commission for services in making the audit, from which the charge for each day or hour and the expenses could be ascertained, sufficiently complies with sec. 60.33, Stats., relative to the audit of claims against a town; and although the claim was verified by a person who did not describe himself as an agent of the tax commission or one of its officers, the presumption of regularity obtains, as the claim was filed by the commission.   p. 319.

Appeal from an order of the circuit court for Iron county: G. N. Risjord, Circuit Judge.   *Reversed.*

For the appellants there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

For the respondent the cause was submitted on the brief of *Lamoreux & Cate* of Ashland.

JONES, J.   This is an appeal from an order overruling a general demurrer to the complaint in a taxpayer's action. The action was brought by a taxpayer of the town of Mercer, Iron county, against the county clerk to restrain him from certifying the amount of a certain charge against the town to the town clerk and to enjoin the town clerk from placing the same on the tax roll of the town.

The action was brought on behalf of the plaintiff and all taxpayers of the town. The complaint alleged that during the months of August and September in 1921 the tax commission of the state made a pretended audit of the books of the town and thereafter presented to the town its account and claim for such services and expenses in the sum of $811.61. The complaint included a copy of this claim. It was further alleged that the board of supervisors at a regular meeting had disallowed the claim; that no part had been paid; and that no action had been commenced against the town; that thereafter the tax commission had filed with the state treasurer and the secretary of state duplicate statements of the claim; that the secretary of state had certified to the county clerk the amount of taxes apportioned to the county, including the sum of $811.61 as a special charge against the town to be included in the state taxes to be apportioned and collected; that the county clerk threatened to certify the same to the town clerk to be spread upon the tax roll, and that if this is done the town clerk will place the same on the tax roll to be collected. It is further alleged that the claim is not a legal charge; that the pretended audit was not made by the tax commission at the request of the town board, and that the tax commission in making the pretended audit did not act upon its own motion; that the charges are unreasonable, excessive, and unjust; that the certification of the pretended claim by the secretary of state was without authority of law; that the statute relied upon

as authorizing such proceedings is unconstitutional and void in that it provides for the taking of property of the taxpayers of the town without due process of law. The following is a portion of the statute under which the proceedings were taken—sec. 73.03 (14):

"It shall be the duty of the commission, and it shall have power and authority:

"(14) To inquire into the system of accounting of public funds in use in towns, villages, cities and counties; to devise, prescribe and at the request of any town, village, city or county, to install a system of accounts which shall be as nearly uniform as practicable; . . . and to audit the books of the town, village, city or county officers upon the request of the town or village board, city council or county board, or upon its own motion. It shall be the duty of the commission to establish a scale of charges for the installation of systems of accounts and for audits, when such installation or audit is requested by a town, village, city or county. Upon the completion of such work the commission shall transmit to the clerk of the town, village, city or county, a statement of such charges. Duplicates of such statements shall be filed in the offices of the secretary of state and state treasurer. Within sixty days after the receipt of the above statement of charges, the same shall be audited as other claims against towns, villages, cities and counties are audited and shall be paid into the state treasury, in default of which the same shall become a special charge against such town, village, city or county, and be included in the next apportionment or certification of state taxes and charges, and collected, with interest at the rate of ten per cent. per annum from the date such charges were certified by the commission, as other special charges are certified and collected."

It is claimed by counsel for the plaintiff that if the statute in question is construed as authorizing the collection of charges for auditing the books of the town by the tax commission, whether requested by the board or not, it is unconstitutional as depriving the taxpayer of the town of his property without due process of law. Although this precise

question does not seem to have come before the court, there
have been decisions relating to other sections of the statutes
in ch. 73 and the powers conferred upon the tax commission
which have a direct bearing. In the case of *State ex rel.
Hessey v. Daniels,* 143 Wis. 649, 128 N. W. 565, the consti-
tutionality of sections which authorized the tax commission
to reassess property in the several assessment districts was
directly and vigorously attacked. It was objected that the
statute provided for taking possession of the local affairs of
communities in respect to taxation; that the statute required
the compensation of foreign assessors to be fixed by foreign
authority much above the ordinary compensation for such
service when rendered by the regular local officers; that the
auditing of such expense was taken from the control of the
local auditing board and made a matter of state concern,
wholly at the expense of the locality. Notwithstanding these
objections, in an opinion by Mr. Justice BARNES the consti-
tutionality of the act was upheld. In *State ex rel. Att'y
Gen. v. Hammerlund,* 159 Wis. 315, 150 N. W. 512, the tax
commission had caused a reassessment of property in the
city of Janesville to be made pursuant to secs. 1087—43 to
1087—57 of the Statutes, and the cost of the proceedings
was paid out of the state treasury and certified to the city
clerk, who refused to comply with the command of the stat-
ute as to extending the same on the tax roll. A writ of
*mandamus* was issued to compel him so to do. Among
other objections it was argued that the reassessment was
undertaken as a matter of state government for which the
state should pay the expenses and that the statute which im-
posed them upon the locality was arbitrary and unjust. It
was decided by this court that since the statute had been
held constitutional, that decision carried with it the means
provided therein which were necessary for its vitality, such
as expenses of administration; that by the statute the tax
commission was made an instrumentality for the correction

of improper local administration; that the expense of reassessment is a local, not a state expense, and that "In paying it—though the form is the same as that of paying claims against the state,—the act, in practical effect, is merely that of taking over, by the state, of the claims for doing the work for the locality, which equitably constitute a local burden, and by force of the statute are made such legally." *State ex rel. Att'y Gen. v. Hammerlund,* 159 Wis. 315, 150 N. W. 512.

The sections of the statute providing for the collection of the expenses of a reassessment (73.12) and of the examination of the records of municipalities (sub. (6), sec. 73.03) are quite similar to the provisions of the statute now under consideration. According to the provisions of sec. 1077a, Stats. 1898, under certain conditions circuit judges were authorized to appoint three commissioners, nonresidents of the county, to make valuations of the property of towns, villages, and cities. The statute provided a fixed per diem charge for their services and for the services of a stenographer, and that the expense should be audited by the board of supervisors or the judge and paid in the manner that jurors and witnesses in state cases are paid. This statute was often the subject of litigation, and among other grounds it was objected to as taking property without due process of law. But the statute was upheld as constitutional in numerous decisions. *Foster v. Rowe,* 128 Wis. 326, 107 N. W. 635; *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797.

The statutes we have referred to are all directly connected with the administration of the tax laws of the state. It was long notorious that assessors in different parts of the state adopted widely different methods in their valuations of property, in some communities assessing property at its full value or more and in others at a mere fraction of its value. These statutes were designed to secure greater uniformity

and a more equitable distribution of the burdens of taxation. Situations may arise where such an audit of the books of a town, village, or city as is prescribed in the statute now under consideration may be of very great importance in discovering mistakes or irregularities in respect to tax proceedings or other matters. Such an audit might be highly beneficial to the taxpayers of the district and incidentally to the general public. It is fair to assume that the tax commission had established a system of making charges for making audits of this kind and that such charges were reasonable. The town had the benefit of the services and they were performed in compliance with the wishes of the electors. It is true that it was left to administrative officers and not to the court to determine the amount of the charge and the value of the services, but in view of the fact that a similar method prescribed in other statutes had long been upheld by this court, we do not consider that any constitutional right of the town has been disregarded.

It is argued by counsel for the town that the audit was not authorized because it appears from the complaint that it was not requested by the town board. Counsel for the State urge that, since it appears that the request was made by the town meeting, this answers the call of the statute; that the audit may be set in motion by the municipalities named, and that it is more in consonance with the real meaning of the statute that the request should come from the real governing body of the town than from the board, since the examination is apt to relate to the conduct of town officers, who might be reluctant to call for an investigation of their own acts. This argument would have greater weight if there were no other mode provided for initiating the proceeding. The language of the statute is, "upon the request of the town or village board." It seems to us that these words mean the town board, and that it would be a forced construction to hold that they relate to the town

meeting.   There is no claim that any request was made by the town board, hence if the audit is held to have been legally made it must be on some other ground.

It is argued by counsel for the State that from the language of the complaint it should be held that the audit was made by the commission "upon its own motion."   On the other hand, it is claimed by counsel for the town that since it appears that the services were rendered "as per resolution of the annual town meeting," it conclusively appears that the audit was made not on the motion of the tax commission but on the request of the town meeting.   It is plain that when an audit is to be made the tax commission acts in one of two ways.   When the town board makes the request it is the "duty" of the commission to act.   But such a request is not the only ground on which its action may be based.   When the statute prescribes that the commission may act upon its own motion, there is given the power to exercise discretion whether to make an audit or to refrain from so doing.   It is claimed by the counsel for the town that this discretion can only be exercised after determination of the commission, which must be based on information in its hands and after investigation as to the necessity for the audit.   But the statute prescribes no such conditions.   It is not to be presumed that the tax commission would undertake the labor and incur the expense of making such audits as the statute authorizes without some information or some consideration of the subject.   There are many ways in which facts might come to the attention of the commission which might seem to make the audit necessary.   If a resolution were passed by the voters of a town at their regular town meeting suggesting the need for an audit, it would seem quite appropriate for the commission to consider the subject and to take action if in its judgment it seemed best.   But such action would rest wholly in its discretion and in the final analysis would be upon its own motion.   Considering all the allegations of

the complaint in connection with the statute, we are disposed to regard the averment that the commission did not act upon its own motion as more nearly a conclusion of law than an allegation of fact.

The further objection is made by counsel for the town that sec. 60.33, as to the audit of claims against towns, was not complied with. It is unnecessary to set out in detail the items of the account. The claim specified the days of the months on which the accountants worked "full time;" also the number of hours when they worked "part time." The same is true as to the services of the stenographer. It also stated the total cost, including the expenses, as follows:

Total cost includes:
Actual salaries and expenses of accountants......$735 56
Five per cent. overhead charge........  ......  38 65
Transcribing and binding the report.............  37 40

$811 61

From the claim it could be easily ascertained what was the charge for each day or hour and what the expenses were. We do not think the objection well taken.

The claim was sworn to, but the verification was not made by any person describing himself as an agent of the tax commission or as one of the officers of that body, and it is urged that the verification was insufficient. Since the claim was filed by the state tax commission, we think that the presumption of regularity obtains and that the objection is not well taken.

*By the Court.*—The order overruling the demurrer is reversed, and the cause remanded for further proceedings according to law.